GARY M. RESTAINO
United States Attorney
District of Arizona
MATTHEW C. CASSELL
Assistant U.S. Attorney
Colorado State Bar No. 38157
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Matthew.Cassell@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States America,<br><br>            Plaintiff,<br><br>      vs.<br><br>Romeo Santino Giovanni,<br><br>            Defendant. | CR 17-1428-TUC-JAS-BGM<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

Now comes the United States of America, by and through its attorneys undersigned, and submits the following regarding the above-captioned defendant's sentencing.

1. At about 2:28 p.m. on July 5, 2016, a corrections officer approached cell 210 of the special housing unit on D-range at the United States Penitentiary, located in Tucson, Arizona. When the officer came to the cell, he saw the defendant, who was taking up the window space. The officer heard the defendant say words to the effect of "you need to get this trash out of here." The defendant then stepped back from the window space to reveal the body of the victim, C.D.S., laying in the bottom bunk bed. When the CO entered the cell, the defendant said words to the effect of "he's gone."

2. The victim had ligature marks on his neck and discoloration to his face. ∆ was removed from the cell and placed in a holding cell at this point. The victim was pronounced dead at 3:08 p.m. The Pima County Office of the Medical Examiner conducted an autopsy on July 9, 2016, and it determined the cause of death was asphyxia caused by ligature

strangulation. Investigators found a strip of cloth used as a strangulation device on the bed, a white piece of paper with "justice served" written on it on the victim's body, and a piece of paper with "lights out" written on it. The defendant later admitted he wrote those two notes.

3. Investigators noticed the defendant had marks on his hands consistent with wrapping something tightly around his hand for a period of time. The defendant stated to investigators that he didn't have a "cellie" anymore because he "strangled that piece of shit, that's why . . . I strangled his sick ass to death." The defendant told a nurse practitioner, "I waited until staff did their rounds and made my move." The NP noted that the defendant appeared to be "in good spirits." After he waived his Miranda rights, the defendant told the FBI that he and the victim exchanged words about why the victim was incarcerated. The defendant admitted to the FBI that he knocked the victim down and then jumped on top of him. During the struggle, the defendant grabbed a long piece of sheet they used as a clothesline to strangle the victim. The defendant described the strangulation as an arduous process that took some time. At one point, the defendant thought the victim was unconscious or dead and gave up pressure on the cloth, at which point the victim gasped and took some air in. The defendant then wrapped the sheet back around the victim's neck and pulled until his fingers were numb and the victim's body gave. The defendant indicated he initially only planned to assault the victim, but he also knew if he put the victim in fear for his life and then let him go, the defendant himself would be in danger, so he decided to kill him, although the defendant did indicate he'd previously thought about killing the victim prior to that day.

4. The government presented the case for indictment to a Tucson federal grand jury on September 13 2017. The grand jury indicted the defendant on a single count of first degree murder. The defendant pled guilty to an information charging him with one count of second degree murder on May 23, 2024. The government is in compliance with the Crime Victims' Rights Act. The government understands the victim's wife provided a statement to the probation department and expects the victim's wife to provide the Court with a verbal

victim impact statement.

5.  The government has reviewed the probation department's disposition report, and has no additions or corrections to the factual statements or guideline/criminal history calculations. The defendant's guideline sentencing range is 360 months imprisonment to life, based on a total offense level 38 and criminal history category VI, and the plea agreement calls for a sentence of 15-20 years of incarceration. The probation department recommends the Court reject the parties negotiated plea agreement and sentence the defendant to 30 years of incarceration.

6.  All sentencing proceedings begin by determining the applicable U.S.S.G. range. *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008)(en Banc). This range is the initial confinement benchmark and should be kept in mind throughout the sentencing process. *Gall v. United States*, 552 U.S. 38 (2007). Therefore, the Court must consider the guidelines when determining an appropriate sentence. *U.S. v. Booker*, 543 U.S. 220 (2005). However, the guidelines "are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Gall*, supra. Accordingly:

> "[T]he district court should then consider the [18 U.S.C.] § 3553(a) factors to decide if they support the sentence suggested by the parties, i.e., it should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims."

*Carty, supra* (quoting 18 U.S.C. 3553(a)(1)-(7) and *Gall, supra*).

7.  The government respectfully requests the Court sentence the defendant to 20 years of imprisonment for killing the victim. The government will further address its recommendation at the sentencing hearing, currently scheduled for October 16, 2024.

Respectfully submitted this 7th day of October, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Matthew C. Cassell*

MATTHEW C. CASSELL
Assistant United States Attorney

Copy of the foregoing served electronically or by other means this 16th of October, 2024, to:

All ECF Participants